##### IN THE

# SUPREME COURT

##### OF THE

# STATE OF LOUISIANA.

---

WESTERN DISTRICT, SEPTEMBER TERM, 1823.

---

*LANDREAU* vs. *ROCHELLE & AL.*

APPEAL from the court of the sixth district.

PORTER, J. delivered the opinion of the court.

This action has commenced by an injunction staying the defendant from further proceedings under an execution. The facts on which we are called to prononnce a judgment, are so numerous, and some of the transactions so obscure and equivocal, that we find it necessary to state them at length.

The defendants in this case are the agents of Martineaux & son, and the claim which they prosecuted by an application for an order of

A debtor cannot avail himself of a payment made contrary to the consent of the creditor, on the pretence that the person he owed, was agent of him to whom the payment was made.

VOL. I. (N. S.)     63

West'n District seizure and sale, is due to those persons.
*Sept.* 1823. The plaintiff avers, that he has paid them at
LANDREAU several times, and in various ways.   The most
*vs.*
ROCHELLE& AL regular way of conducting the enquiry, will be
to see for what amount the plaintiff was indebt-
ed to the principals, Martineaux & Son.

Before stating the agreement, which the
parties entered into, and which forms the basis
of all the subsequent transactions, it is proper
to observe that the plaintiff arrived in this
country from France, some time previous to
the month of June, 1817, charged with a pow-
er of attorney from his mother, to act for her,
in relation to the estate of his brother, who
had been a partner of the commercial firm of
Martineaux & Landreau. In the month of
July, 1817, the plaintiff entered into articles of
partnership with Louis Martineaux and
Charles Martineaux, in which it was stipula-
ted that, in order to simplify the accounts ex-
isting between them, and to prevent unneces-
sary delays in the collection of the claims of
the late firm of Martineaux & Landreau, they
had agreed—the former, as attorney in fact of
his mother, the *recognized heir,* as she is called
in the instrument—the latter, in their own
right, that all property was to be held for

common benefit, and to be in partnership for two years.

Before the expiration of these two years, to wit : on the 8th day of April, then next following, the parties entered into another contract, which it is necessary to set forth particularly.

This contract states that, Charles Martineaux for himself, and as attorney in fact for his father, John Charles Louis Martineaux, had sold, (with some exceptions,) to the plaintiff, all their interest in the property belonging to the partnership, which they had entered into the preceding year. In consideration of which he, the plaintiff, promised to pay, first, all the debts due by the firm, amounting to the sum of eleven thousand six hundred and fifty dollars; second, to pay to the vendors the sum of twenty-one thousand dollars, that is to say, on the 31st of December, 1819, the sum of $5000; on the 31st of December, 1820, $12000; on the 31st December, 1821, $4000.

The property, in France, belonging to the firm, was excepted from the sale, and it was stipulated that after deducting expenses and charges, it was to be divided into three equal portions, and that Landreau's portion should be applied by Martineaux & son, to the

West'n District payment of so much of the amount of the
*Sept. 1823.*  notes, which the plaintiff had given in payment,
LANDREAU   of the property purchased by him.
*vs.*
ROCHELLE&AL

It was, also, further stipulated, that the
debts due to the firm, amounting to the sum of
8350 dollars, should be excluded from the sale,
and that they were to be collected at joint ex-
pense, and distributed according to the shares
which the respective parties had in them.
That should the debts due *by* the firm amount
to more than the estimate made by them, then
the overplus should be paid, one third by each
of the parties to the act, and that if it turned
out they were less, the plaintiff should pay two
thirds of the deficit, to J. C. L. Martineaux
and Charles Martineaux.   This part of the a-
greement was afterwards modified, so as to
make the payment of this overplus, or the sup-
ply of the deficit, come out of the debts due
to the firm.

This agreement comprehends, so far as we
can gather, all the claim which Martineaux &
son, had on the plaintiff, with the exception
of a note for two thousand dollars, dated the
2d of July, 1818, payable to Charles Martin-
eaux, on which a separate suit has been

brought, and which by the consent of the parties, has been consolidated with this.

The plaintiff, in his petition, avers, that the act of mortgage, on which the defendants have sued out an order of seizure, and sale was given by him in error; that he thought, at that time, the sum expressed in the said deed was due the defendants, as agents of Martineaux & son, but that in fact, nothing was due. The petitioner proceeds to state the transactions which he had with Martineaux & son, and avers that he has paid their agents the present defendants, nine thousand dollars, through the hands of Josiah S. Johnston; that the proceeds of certain cotton and peltry, in France, of which his share was $10325, had been received by Martineaux & son; that he had also paid them $5500, through the hands of Charles Martineaux; and another sum of $500, to Rochelle & Shiff, by a certain Mr. Booth.

The defendants, in their answer, admit some of the allegations in the plaintiff's petition, and deny others. They admit the receipt of $9000, per Johnston; deny the payment of $5500 to Charles Martineaux; and that they have received $500 from Booth. They require proof of the sum alleged to be paid in

West'n District
*Sept.* 1823.

LANDREAU
*vs.*
ROCHELLE&AL

France; and they aver that the plaintiff, on the dissolution of the partnership bound himself to pay the debts of the firm; that the sum of $1618 19, was owing by the partnership to the defendants; that the sum paid by them to M'Master, of $2722, was due by the plaintiff, in his individual capacity; and that the whole amount which they had a right to demand from him, was $27340 93, with interest from the day of ———. After hearing the proof adduced in support of the allegations of the respective parties, the district court gave judgment for the plaintiff, and perpetuated the injunction. The defendants appealed.

The plaintiff annexed to his petition, various interrogatories, some of which, with the answers made by the defendants, are material.

In the fifth he asks, what was the amount due them by Martineaux & son, on the 8th of April, 1818, the date of the dissolution of the firm?

To which they answer, $1417 22; and that this sum, with interest, afterwards amounted to $1618 93.

By the seventh they are interrogated, " Did not Charles Martineaux pay you the sum of $5500, in the spring or summer of the year

1818, which sum was sent by petitioner, on account of the debt due at that time by Martineaux & son; and did not Booth pay you $500?"

To this they reply, that during the spring and summer of 1818, they had several transactions in cotton, bills, &c. with Martineaux & son, but never received from them the exact sum of $5500, alluded to in the petition nor did they receive, at that time, any money from Landreau, on account of Martineaux. They acknowledge the receipt of $500 from Booth, but do not know whether he paid it on account of the petitioner, or Martineaux & son.

The principal payments on which the defendants rely, are as follows:

1. The one third of the proceeds of cotton and peltry sold in France.

2. The sum of $9000, paid by Josiah S. Johnston.

3. $5919, paid to Charles Martineaux.

In support of the first, he produces the original articles of agreement, in which Martincaux & son, acknowledge that the amount of sales shall be equally divided between them; and their account current, by which the part of the petitioner is shewn to be $9400. In op-

position to this credit to the extent claimed by the plaintiff, the defendants shew that by the account current which is introduced by the former, it appears that Martineaux & Son, have paid to his mother, and wife, in France, a considerable portion of this money, and it has been contended that this payment must be presumed to have been by his consent and approbation; that the property, at all events, belonged to his mother; and, lastly, that he has approved of this application of his funds, by introducing an account current, in which this payment is stated to have been made.

We see nothing in the evidence, which authorises us to presume the petitioner assented to this payment. Admitting the property to belong to the mother, we do not think that Martinaux & son were authorised to make *a voluntary payment* to her, in opposition to the express stipulation they made in the contract, by which the plaintiff purchased their share in the partnership. The words of the agreement are, "that the amount arising from the sale of the cotton and peltries shall be applied by Jean Charles Louis Martineaux, and Charles Martineaux, to the payment of so much of the amount of the notes of Pierre Landreau."

After this stipulation on their part, which is one of the conditions on which the petitioner made the purchase, they had no right to apply the funds in their hands to another purpose. The production of the account current, is an acknowledgement that such a payment was made, as is stated, but not that it was legally made.

The amount paid by Johnston is not certified.

The greatest difficulty, in the case, arises from an alleged payment made to Charles Martineaux, which is said to be evidenced by a document of which the following is a literal translation.

" I, the undersigned state, that the amount of drafts and notes below, are to the discharge of *M.* Landreau, for the account of *Martineaux* & sons with Rochelle & Shiff."

After giving a list of the notes, &c. he concludes "which $5919 60, I declare to be at the discharge of the account, which we have with Rochelle & Shiff, on the particular account of M. Landreau, which account I have said to be $6600 "

This receipt is dated the 20th April, 1818, and signed —— Charles Martineaux & son.

West'n District
*Sept.* 1823.

LANDREAU
*vs.*
ROCHELLE & AL

The terms of this receipt have given rise to much argument. We think the idea expressed by them is, that the amount received is to be applied to extinguish a debt which Martineaux & son owed Rochelle & Shiff, on account of the petitioner. The petitioner says, it means that the firm of Martineaux & son owe $6600 to Rochelle & Shiff, which is to be paid by Landreau. The defendants contend that it is a certificate, which states that certain bills and notes are at the credit of Landreau's private account with Rochelle & Shiff. Neither of these conclusions is supported by the language of the instrument, which states that the papers and notes, there n mentioned, are at the discharge of the account of the persons who sign it, with Rochelle & Shiff, on the particular account of M. Landreau. It is clearly the account of Martineaux & son that they are placed to the credit of, and it is equally clear that they contemplate that account to have been contracted for Landreau.

With this understanding of the instrument, we proceed to examine what effect it should have in this case. The plaintiff contends that, as it appears only $1407 were due to Rochelle & Shiff by Martineaux & son, at the time the

latter and the petitioner dissolved partnership, all the surplus should be credited on the notes he executed in their favor; while on the other side it is insisted that it is an acknow- ledgement of a personal debt due by Landreau, which he has not disproved, and that if he has established it to be a partnership debt, it amounts to nothing more than an error in estimating the debts of the firm, and that consequently Martineaux & son are entitled to two thirds of the overplus. We have already said these obligations were given to pay a debt, which the parties seem to have considered Martineaux & son had contracted, to Rochelle & Shiff, on account of Landreau. The question then is, does the evidence sufficiently contradict the acknowledgement, on the part of the latter, that such a debt was due? We think it does. We have the answer of Rochelle & Shiff, that on the 6th of April, of that year, Martineaux & son, only owed them 1417 dollars. Now, if they had an account, at that time, with Rochelle & Shiff and owed them 6600 dollars, it is impossible the answer of the defendants can be correct. But that cannot be disputed by them. It is, indeed, barely possible, that the debt was contracted between

the 8th of April, to which time the answer to the interrogatories refers, and the 18th, on which the receipt was taken. But, besides the improbability of this, owing to the distance of the parties, &c. the defendants in another part of their answer swear, that this sum of 1417 dollars, with interest, was all that was due to them by Martineaux & son, on account of these transactions, at their departure from France. Another circumstance strongly corroborates the idea that there was error or fraud in this transaction. The defendants, in their answer, enter into a history of the transactions which they have had with the principals and the plaintiff, in relation to the matters involved in this controversy. They are minute in their statements. They make no assertion that any such sum was due them by Martineaux & son, at any period of time, as is mentioned in the receipt. They produce a schedule made by the plaintiff himself, on the 15th of April, three days before passing off these notes, in which not a word is said of his either owing Rochelle & Shiff, or the persons for whom they are agents, such a sum as 6600 dollars, and as to his having a personal account with them for that amount, it is expressly contradicted

by the answers to the interrogatories pro-
pounded.

The greatest difficulty in the administration of justice, is ascertaining the truth in relation to facts, and notwithstanding all the evidence, which has been offered, it does still appear extraordinary that such an assignment should have been made, when no such a debt existed. It cannot be easily accounted for, except by supposing gross ignorance in one of the parties. But it is still less easy to reconcile the evidence in the cause, with the acknowledgment which the receipt taken contains. Indeed, it is impossible to do so.

On the whole, we think, that a credit must be given to the petitioner, for the net proceeds of one third of the cotton and peltries sold in France; for the money paid by Johnston: for that expressed in the receipt by Martineaux ; and for the 500 dollars paid by Booth; adding them together, fully justifies the judgment of the district court, as it respects the appellant, and not being complained of by the appellee, it can have no amendment as it respects him.

In considering the rights of the parties, we have viewed the defendants in their character as agents alone, consequently, any claims they

may have in their own right, are untouched by this judgment.

It is, therefore, ordered, adjudged and decreed, that the judgment of the district court be affirmed with costs, so far as it confirms the injunction; and that it be annulled, avoided and reversed, so far as it decrees the plaintiff, Landreau, to pay to Rochelle & Shiff, $707 63, without prejudice to the right of Martineaux & son, in case they should hereafter shew that the payment made to the mother and wife of Landreau in France, as stated in the account current filed in the case, was made under the authority of said Landreau.

*Johnston, Deblieux & Morris* for the plaintiff, *Bullard & Johnston* for the defendants.